IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Dennis M. Gallipeau, #16472-171, ) | CIVIL ACTION NO. 9:13-0505-TMC-BM |
| ) | |
| Plaintiff, ) | |
| ) | |
| v.                          ) | **REPORT AND RECOMMENDATION** |
| ) | |
| Linda Mickens Ham and James R. Metts, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

This action has been filed by the Plaintiff, pro se, pursuant to 42 U.S.C. § 1983. Plaintiff, an inmate in a federal penitentiary in Mississippi, alleges violations of his constitutional rights by the named Defendants while he was a detainee at the Lexington County Detention Center in Lexington County, South Carolina.

The Defendants filed a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P. on December 16, 2013. As the Plaintiff is proceeding pro se, a Roseboro order was entered by the Court on December 17, 2013, advising Plaintiff of the importance of a dispositive motion and of the need for him to file an adequate response. Plaintiff was specifically advised that if he failed to respond adequately, the Defendants' motion may be granted, thereby ending his case. After being granted an extension of time to respond, Plaintiff filed a memorandum in opposition to the Defendants' motion, with attached exhibits, on March 3, 2014.



Defendants' motion is now before the Court for disposition.[1]

**Background and Evidence**

Plaintiff alleges in his First Verified Amended Complaint[2] that at all times relevant to his claims he was a pretrial detainee at the Lexington County Detention Center in Lexington, South Carolina. Plaintiff alleges that the Defendant Linda Ham was an officer at the LCDC, while the Defendant Metts was the Sheriff of Lexington County. Plaintiff alleges that on or about June 30, 2009, he was scheduled to appear in court for jury selection, and that when the Defendant Ham came to collect him for court that day, he informed Ham that he wanted to shave. Plaintiff alleges that he and Ham engaged in an argument about whether or not Plaintiff would be permitted to shave, and that although Ham "eventually relented and permitted Plaintiff to shave", she nevertheless harassed, insulted, and made threatening statements to him while he was shaving and dressing in the Unit. Plaintiff alleges that, thereafter, while escorting Plaintiff through the Unit to the rear door, Ham pushed him into the rear door, and that then, when they were walking through a corridor, Ham suddenly grabbed and twisted his hand and arm behind his back "so violently that Plaintiff was lifted almost off his feet". Plaintiff further alleges that throughout all of these events, Ham made unprovoked racial slurs,[3] insults, threats, taunts, and other statements to the Plaintiff. Plaintiff alleges

---

[1] This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d) and (e), D.S.C. The Defendants have filed a motion for summary judgment. As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.

[2] In this Circuit, verified complaints by pro se litigants are to be considered as affidavits and may, standing alone, defeat a motion for summary judgment when the factual allegations contained therein are based on personal knowledge. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991).

[3] Plaintiff is white, while Ham is African American.



that at no time did he resist Ham or pose any threat to the safety of staff, and that there was at no time any need for the application of force. Plaintiff alleges that Ham's actions caused him to suffer serious injury, tearing his rotator cuff and causing severe nerve damage in his arm, hand and fingers. Plaintiff alleges that he continues to suffer numbness and tingling in his arm, hand and fingers.

Plaintiff asserts five causes of action in his Complaint. In his **First Cause of Action**, Plaintiff alleges that Ham violated his constitutional rights by subjecting him to excessive use of force without justification or penalogical purpose. In his **Second Cause of Action**, Plaintiff asserts a state law claim of assault under South Carolina law against both Defendants. In his **Third Cause of Action**, Plaintiff asserts a second state law claim of assault against both Defendants. In his **Fourth Cause of Action**, Plaintiff asserts a state law a claim of battery against both Defendants. In his **Fifth Cause of Action**, Plaintiff asserts a state law claim for assault and battery against both Defendants. Plaintiff further alleges in his Complaint that, to the extent his Complaint might otherwise be deemed to be untimely, he is entitled to equitable tolling of any applicable filing periods that may have expired. Plaintiff seeks monetary damages. See generally, Plaintiff's First Amended Verified Complaint.

In support of summary judgment in the case, the Defendant Linda Mickens-Ham has submitted an affidavit wherein she attests that during the relevant time period she was a Master Corrections Officer at the Lexington County Detention Center, and that on or about June 30, 2009 she was attempting to escort Plaintiff to the booking area of the Detention Center so he could be transported to the courthouse for a scheduled appearance. Ham attests that Plaintiff refused to be taken to the booking area unless he was first allowed to shave, and that when she informed Plaintiff that he would be allowed to shave in the booking area, Plaintiff became irritated and told her that if



he was not allowed to shave before he was taken to the booking area, he would file a lawsuit against her. Ham attests that Plaintiff eventually relented and agreed to be taken to the booking area, where he was allowed to shave prior to his transport to the courthouse. Ham attests that at no time during these events did she assault, batter or otherwise violate Plaintiff's constitutional rights, nor did she witness any other corrections officer assault, batter or otherwise violate Plaintiff's constitutional rights in any way. See generally, Ham Affidavit.

The Defendant James R. Metts has also submitted an affidavit wherein he attests that he is the Sheriff of Lexington County, and as such is charged with the control and administration of the Lexington County Detention Center. Metts attests that he has appointed a jail administrator (Kevin Jones) to handle the day to day operations of the Detention Center, and who sets the policies for the Detention Center, which Metts reviews and approves. Metts further attests that Jones is in charge of the employees who work at the Detention Center, although final hiring and firing authority lies with him [Metts]. Metts attests that he does not recall having any personal involvement with the Plaintiff at any point during the time that he was held at the Lexington County Detention Center. See generally, Metts Affidavit.

The Defendants have also submitted an affidavit from Melissa Lyons, who attests that she is a Sergeant assigned to the Detention Center, where she serves as the Grievance Manager. Lyons attests that the Detention Center has an established inmate grievance policy that allows inmates to file grievances on a number of matters, including allegations of abuse, neglect or mistreatment by staff. Lyons has attached a copy of the LCDC Policy and Procedure Manual relating to grievances that was in effect in June 2009 to her affidavit as Exhibit A. Lyons attests that the grievance procedure in place in 2009 required that inmates file a formal grievance within seven days after a



potentially grievable event occurred, that the grievance would then have been read and considered by the dorm officer to determine if the problem could be solved by the officer, and that if the officer was unable to resolve the inmate's problem, the officer would forward the request to the shift supervisor. The shift supervisor would then forward any grievance that he or she could not address to the appropriate person for response. Lyons attests that written responses to the inmate's grievance were to be returned to the inmate within ten working days of the date that the grievance was received, and that if the inmate was not satisfied with the response, the grievance policy provided a procedure through which the inmate could appeal.

Lyons further attests that, per the grievance policy, copies of all inmate grievances are to be filed in the inmate's booking jacket, and that in preparing her affidavit she reviewed the inmate records that were created and compiled during Plaintiff's incarceration at the Detention Center, a copy of which she has attached to her affidavit as Exhibit B. Lyons attests that, according to Plaintiff's inmate records, he was housed at the Detention Center on three separate occasions: from August 11, 2008 until September 15, 2008; from February 27, 2009 until August 17, 2009; and from November 20, 2009 until December 7, 2009. Lyons attests that upon a thorough review of Plaintiff's inmate records, it does not appear that he ever filed any grievances during any of his periods of incarceration at the Detention Center. Further, while she is aware that Plaintiff had previously presented the Court (in an earlier case)[4] with a copy of an Inmate Request grievance form that he claims to have filed on or about June 30, 2009, that no record exists of any such grievance ever being filed with the Detention Center.

Lyons concludes by attesting that, in her role as the Grievance Manager for the

---

[4] Gallipeau v. Ham, Civil Action No. 09-1883 (D.S.C.).



Detention Center, she has reviewed all inmate records on file regarding the Plaintiff, and that Plaintiff did not file, much less appeal, any grievance relating to the allegations made in this lawsuit. See generally, Lyons Affidavit, with attached Exhibits.

The Defendants have also provided an affidavit from Brian Currence, who attests that he is a Captain with the Lexington County Sheriff's Office, where he oversees the Internal Affairs and Professional Standards Division. Currence attests that the goal of this division is to ensure the integrity and professionalism of the Sheriff's Department by investigating all allegations of serious officer misconduct, overseeing other complaints made against departmental employees, and conducting administrative staff inspections. Currence further attests that when an inmate alleges that he or she has been abused by a staff member, a copy of that grievance may be forwarded to the Internal Affairs and Professional Standards Division for investigation, and that after review of his files to determine whether any grievance filed by the Plaintiff was ever forwarded to the Internal Affairs and Professional Standards Division, he cannot find where a complaint from the Plaintiff was ever forwarded to that Division for investigation. See generally, Currence Affidavit.

As part of their motion for summary judgment, Defendants also reference the Court to the docket entry No. 35-3 of Civil Action No. 09-1883 (Plaintiff's previous case), which consists of an Affidavit from Sheri Lee with attached Exhibit.[5] Lee attests that she is the Records Custodian by Correct Care Solutions, the medical provider for the Lexington County Detention Center, and that she has attached to her affidavit a copy of the complete medical record for the Plaintiff while housed at the Detention Center. Lee further attests that she performed a thorough and diligent search of

---

[5] A federal court may take judicial notice of the contents of its own records. Aloe Creme Laboratories, Inc. v. Francine Co., 425 F.2d 1295, 1296 (5th Cir. 1970)



Plaintiff's medical records, and that at no time during his detention at the Detention Center did Plaintiff ever complain of a torn rotator cuff, nerve damage to his arm and hand, or any other physical injury. See generally, Lee Affidavit, with attached Exhibit [Plaintiff's Medical Records].

In opposition to Defendants' motion for summary judgment, Plaintiff has submitted a "Declaration" in which he attests that on June 30, 2009, after returning from court, he completed a grievance concerning the subject matter of this lawsuit, which is attached to his declaration as Exhibit A. Exhibit A is a copy of an Inmate Request Form bearing the date 6/30/2009, in which Plaintiff asserts that prior to going to court that day he was harassed by a pod officer named "Mac" and by the Defendant Ham, and that Ham had pushed him into a rear hall door and also twisted his hand and arm up behind his back. Plaintiff asked for his arm to be looked at and to be taken to an outside facility.

Plaintiff attests in his Declaration that he obtained this grievance form from an officer in the booking area, and that he asked this officer to make a copy for him, which the officer did.[6] Plaintiff has also attached as Exhibit C to his Declaration a copy of an affidavit from Lynn Gunter,[7] wherein Gunter attests that she was a Lieutenant with the Lexington County Detention Center, and that after a thorough and diligent search was able to determine that Plaintiff had not appealed any grievance filed while he was detained at the Lexington County Detention Center. However,

---

[6] Although Petitioner claims that he asked the officer to make him a copy, the undersigned is constrained to note that, pursuant to the Grievance Policy, an inmate filing a grievance automatically gets a carbon copy of the completed grievance. See Court Docket No. 54-5, p. 3. Plaintiff makes no mention of the bottom copy of the grievance, what happened to that copy, or why it was necessary to ask an officer to make him a copy.

[7] This affidavit was originally submitted in yet another of Plaintiff's cases, Gallipeau v. Lexington County Detention Center, Civil Action No. 09-1657 (D.S.C.). That case dealt with problems Plaintiff was allegedly having receiving a diet tray.



while Plaintiff concedes in his Declaration that he did not appeal the grievance evidenced by his attached Exhibit A, he states that is because he never received a response to that grievance. Plaintiff also attests that even if he had wanted to appeal an unfavorable response to a grievance, he would not have known how to go about appealing an unfavorable decision, because the Detention Center Policy and Procedures Manual relating to grievances was never made available to him while at the Detention Center. Rather, Plaintiff attests that a summary of the inmate grievance system was what was made available to him, a copy of which is attached to his Declaration as Exhibit D. This summary provides:

> Communication between staff and inmates are essential to the efficient operation of the detention center. The facility will provide a means for inmates to communicate with all components of the Bureau by means of an Inmate Request Form. If you have a problem, concern, or questions, you must first contact your unit officer. If the unit officer cannot answer the question or concern, you are to fill out an Inmate Request Form. Your first Request/Grievance Form will be forwarded to the proper authority and answered with ten (10) days. Decisions may be appealed through the chain of command.

See Plaintiff's Exhibit D, ¶ 26.

Plaintiff further attests that the Defendants and their witnesses "thwarted, hindered, and prevented [him] from properly exhausting [his] administrative remedies" prior to filing his initial lawsuit (Civil Action No. 09-1883), which was dismissed as having been filed prior to Plaintiff exhausting his administrative remedies. Finally, Plaintiff has also attached to his affidavit what he describes as "true copies of [his] medical records", which Plaintiff asserts "evidence the injuries inflicted upon [him] by [Ham] on June 30, 2009" and "also demonstrate that I have consistently reported my hand and arm were twisted up behind my back . . . and that the Doctors who have examined me believe my injuries are a torn rotator cuff and nerve injuries". See generally, Plaintiff's



Declaration, with attached Exhibits.

**Discussion**

Defendants have moved for summary judgment on all of Plaintiff's claims. Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Rule 56, Fed.R.Civ.P. The moving party has the burden of proving that judgment on the pleadings is appropriate. Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991). Once the moving party makes this showing, however, in order to avoid summary judgment the opposing party must respond to the motion with specific facts showing there is a genuine issue for trial. Baber v. Hosp. Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992). Further, while the federal courts are charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, see Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972), the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a Federal claim, nor can the Court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Social Services, 901 F.2d 387 (4th Cir. 1990).

Here, after careful review and consideration of the arguments and evidence presented, the undersigned finds and concludes for the reasons set forth hereinbelow that the Defendants are entitled to summary judgment in this case.

**I.**

With respect to Plaintiff's claim in his First Cause of Action that his constitutional



rights were violated by the Defendant Ham when she used allegedly excessive force against him by pushing him into a door and by grabbing and twisting Plaintiff's hand and arm behind his back, Defendants first assert, inter alia, that this claim is barred because Plaintiff failed to exhaust his administrative remedies prior to filing this lawsuit. Pursuant to 42 U.S.C. § 1997e(a), "[n]o action shall be brought with respect to prison conditions under section 1983 of this Title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Through the enactment of this statute, Congress has mandated exhaustion regardless of the relief offered through administrative procedures. Booth v. Churner, 532 U.S. 731, 741 (2001); see Porter v. Nussle, 534 U.S. 516 (2002); Larkin v. Galloway, 266 F.3d 718 (7th Cir. 2001) [exhaustion required even though plaintiff claimed he was afraid]; see also Claybrooks v. Newsome, No. 00-7079, 2001 WL 1089548 (4th Cir. Sept. 18, 2001) (unpublished opinion) [applying Booth v. Churner to affirm district court's denial of relief to plaintiff]. Accordingly, before Plaintiff may proceed on his excessive force claim in this Court, he must first have exhausted the administrative remedies that were available to him at the Lexington County Detention Center.

The Defendants have the burden of showing that Plaintiff failed to exhaust his administrative remedies. See Anderson v. XYZ Correctional Health Services, Inc., 407 F.3d 674, 683 (4th Cir. 2005) [inmate's failure to exhaust administrative remedies is an affirmative defense to be both pled and proven by the Defendant]; Jones v. Bock, 127 S.Ct. 910 (2007). To meet this burden, the Defendants have submitted sworn affidavits from Melissa Lyons, Grievance Manager for the LCDC (with attached Exhibit), and Bryan Currence, Head of the Internal Affairs and Professional Standards Division, both of whom attest to the procedure for filing and pursuing grievances at the



Lexington County Detention Center, and that there is no record of the Plaintiff ever having filed or submitted a grievance concerning the claims asserted in this lawsuit, or indeed any grievance at all during the various periods of time he was incarcerated at the Detention Center. In his response Declaration, Plaintiff asserts that he did submit a grievance to an unidentified officer at the Detention Center, and has attached to his Declaration a copy of what he purportedly submitted. This exhibit is an Inmate Request Form for the Lexington County Detention Center which bears a handwritten date of 6/30/2009 and in which Plaintiff claims that he was harassed and insulted by Ham and another officer named "Mac" because he wanted to shave before going to court, that one of the officers pushed him into a door and twisted his arm and hand behind his back, and that he wanted his arm looked at by an outside doctor, not a doctor from the Detention Center. See Plaintiff's Declaration, attached Exhibit A.[8]

        However, Plaintiff's exhibit does not establish a meritorious attempt by the Plaintiff to exhaust his administrative remedies with respect to his claim sufficient to survive summary judgment. First, as was noted by Judge Cain in his Order in Plaintiff's previous case, the grievance

---

[8]Plaintiff submitted this same Inmate Request Form as an exhibit in his previous case, Gallipeau v. Ham, Civil Action 09-1883 (D.S.C.). The Defendant also asserted failure to exhaust as a defense in that case, and in an Order filed March 23, 2011, the Honorable Henry F. Floyd, [then] United States District Judge, denied Defendant's motion to dismiss Plaintiff's claim on the basis of failure to exhaust because the Defendant had not [in that case] submitted anything showing what remedies Plaintiff needed to exhaust at the LCDC or that he failed to do so, noting that failure to exhaust is an affirmative defense that the Defendant must both plead and prove. In a second Order filed in that case on August 24, 2012 (after Judge Floyd had been elevated to the Fourth Circuit and the case reassigned), the Honorable Timothy M. Cain, United States District Judge, dismissed the case on a separate exhaustion ground, noting that , even assuming for purposes of his Order that Plaintiff did in fact submit the Inmate Grievance Plaintiff had submitted as an exhibit, in light of the fact that Plaintiff's lawsuit was filed only ten days after the date on Plaintiff's Inmate Grievance Form, the Detention Center had had no opportunity to complete the grievance process before Plaintiff had filed his lawsuit. See Cannon v. Washington, 418 F.3d 714, 719 (7th Cir. 2005) [Prisoner may not file a lawsuit before exhausting his administrative remedies].



form submitted as an exhibit by the Plaintiff is unsigned and there is no indication on the face of the document showing that it was ever filed with or received by the Detention Center. While Plaintiff correctly notes that there is no formal requirement that grievances submitted by inmates be signed or date stamped; see also Plaintiff's Exhibit B, pp. 3-5; Plaintiff cannot, in response to the sworn testimony of two witnesses that no grievance was ever received or filed, simply attest that he gave a grievance (which itself bears no indication of ever having been received) to an unnamed, unidentified officer at the Detention Center, present no evidence that he ever thereafter attempted to follow up with respect to the status of this alleged grievance[9] or make any inquiry into whether it had been processed or what was happening with it (although he admits in his Declaration that the summary of the inmate grievance system of which he had knowledge stated that the grievance was supposed to be answered within ten days), and expect to survive summary judgment. Malik v. Sligh, No. 11-1064, 2012 WL 3834850, at * 4 (D.S.C. Sept. 4, 2012)[Properly exhausting administrative remedies means using all steps that the agency holds out, and doing so properly so that the agency may address the issue on the merits] (internal citations and quotations omitted); see also Silvia Dev. Corp. v. Calvert County, Md., 48 F.3d 810, 818 (4th Cir. 1995)[Explaining that while the party opposing summary judgment is entitled to the benefit of inferences that can be drawn from the evidence, "[p]ermissible inferences must still be within the range of probability" and that "[w]hether an inference is reasonable cannot be decided in a vacuum; it must be considered in light of the competing inferences to the contrary"(internal quotation marks omitted)].

      Plaintiff has made no effort, insofar as the Court can discern, to identify the detention

---

[9]Plaintiff concedes in his Declaration that even though he never received a response to his grievance, he did not pursue the matter further or attempt any appeal of this grievance.



center officer whom Plaintiff alleges he gave his grievance form to, or to submit a supportive affidavit from any such correctional officer supporting this claim, nor has he provided any evidence to show what efforts he made, if any, to follow up with or otherwise pursue his grievance after he allegedly gave it to this unnamed, unidentified officer. While inmates can be deemed to have exhausted their administrative remedies where the jail or prison fails to accept or process a grievance; cf. Stenhouse v. Hughes, No. 9:04-23150, 2006 WL 752876, at * 2 (D.S.C. March 21, 2006)["[E]xhaustion may be achieved in situations where prison officials fail to timely advance the inmate's grievance or otherwise prevent him from seeking his administrative remedies"]; Plaintiff cannot simply, in response to probative evidence that no record exists of him ever having submitted a grievance concerning the issues raised in this lawsuit, submit an affidavit saying "yes I did", and expect to survive summary judgment, because if that is all it took to defeat evidence of a failure to exhaust, then this defense could never be successfully asserted by a Defendant. Cf. Malik, 2012 WL 3834850, at * 5 [Finding that Plaintiff's self-serving contention, in response to evidence to the contrary, that he did submit a grievance was "simply not enough to create a genuine dispute as to any material fact"]; see also Nat'l Enters., Inc. v. Barnes, 201 F.3d 331, 335 (4th Cir. 2000)[Holding that a self-serving affidavit was insufficient to survive summary judgment]; King v. Flinn & Dreffein Eng'g Co., No. 09-410, 2012 WL 3133677, at * 10 (W.D.Va. July 30, 2012)[Finding no genuine issue of material fact where only evidence was "uncorroborated and self-serving testimony"], citing Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002).

   Additionally, as noted, even assuming for purposes of summary judgment that Plaintiff did give the grievance form submitted as an exhibit in this case to an unnamed officer at the Detention Center, as he claims, he has presented no evidence whatsoever that he thereafter ever

13



followed up on this grievance to make sure it had been received and reviewed by the appropriate jail officials, or that he otherwise ever attempted to pursue and exhaust the grievance procedure at the jail. Cox v. Grayer, No. 08-1622, 2010 WL 1286837, at * 7 (N.D.Ga. March 29, 2010)["[T]here is no futility exception to [the] exhaustion requirement"]; cf. Spruill v Gillis, 372 F.3d 218, 227-232 (3d Cir. 2004) [Discussing necessity of pursuing all administrative remedies to the end].

In sum, it is undisputed that the Lexington County Detention Center had a grievance procedure in place for inmates at that facility. See Plaintiff's Declaration, p. 2, ¶ 9; Lyons Affidavit, with attached Exhibit; Currence Affidavit. As such, before Plaintiff can pursue his constitutional claim in this Court, he was required to exhaust his administrative remedies through this grievance procedure. Cannon, 418 F.3d at 719 [Prisoner may not file a lawsuit before exhausting his administrative remedies]; see also Hyde v. South Carolina Dep't of Mental Health, 442 S.E.2d 582, 583 (1994) ["Where an adequate administrative remedy is available to determine a question of fact, one must pursue the administrative remedy or be precluded from seeking relief in the courts"]; Nyhuis v. Reno, 204 F.3d 65, 73 (3d Cir. 2000)["It is beyond the power of this court - or any other - to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis."](quoting Beeson v. Fishkill Corr. Facility, 28 F.Supp. 2d 884, 894-895 (S.D.N.Y. 1998)). The evidence before the Court shows that Plaintiff failed to do so. cf. Poe v. Bryant, No. 12-3142, 2013 WL 6158023, at * 2 (D.S.C. Nov. 21, 2013)[Holding that defendants satisfied their burden of showing a failure to exhaust administrative remedies with exhibits detailing the grievance process and showing that Plaintiff failed to exhaust this remedy, and that Plaintiff's contradictory statements in response, including that the Defendant would not provide him a grievance, were not sufficient to avoid summary judgment in light of the contrary evidence]. Therefore, Plaintiff's First



Cause of Action should be dismissed. Malik, 2012 WL 3834850, at * 4 ["A court may not consider, and must dismiss, unexhausted claims"].

## II.

Even assuming for purposes of further discussion of Plaintiff's claims that the Defendants have not established the affirmative defense of failure to exhaust, Plaintiff's § 1983 constitutional claim from Count 1 of his Amended Complaint is still subject to dismissal as being manifestly untimely. Because there is no federal statute of limitations for section 1983 actions, the analogous state statute governing personal injury actions applies. See Wilson v. Garcia, 471 U.S. 261 (1985). The statute of limitations for such causes of action arising in South Carolina is three years. See S.C. Code Ann. § 15-3-530(5); see also Simmons v. South Carolina State Ports Auth., 694 F.2d 64 (4th Cir. 1982)(citing to previous version of statute); Heyward v. Monroe, No. 97-2430, 1998 WL 841494 at * * 3-4 (4th Cir. Dec. 7, 1998). Therefore, in order to sue under 42 U.S.C. § 1983 for a constitutional violation that occurred in June 2009, Plaintiff would have had to have brought this action by at least June 2012. Plaintiff's filing date of this lawsuit pursuant to Houston v. Lack, 487 U.S. 266 (1988) is, at the earliest, February 20, 2013, the date Plaintiff's original Complaint is dated.[10] Hence, this case was filed almost eight months *after* the statute of limitations for filing this lawsuit had expired.

While Plaintiff had previously filed a lawsuit relating to this claim; Gallipeau v. Ham,

---

[10]In Houston v. Lack, the Supreme Court held that a prisoner's pleading is deemed to have been filed at the moment of delivery to prison authorities for forwarding to the District Court. Here, however, there is no indication on the envelope in which the original Complaint was mailed when it was received in the prison mail room. It was received for filing at the Court on February 27, 2013. Therefore, under the most liberal construction Plaintiff could be accorded, his filing date would be February 20, 2013, the date of his Complaint.

15



Civil Action No. 09-1883 (D.S.C.); and his appeal of the dismissal of that first lawsuit was not denied by the Fourth Circuit Court of Appeals until December 27, 2012, only two months prior to the fling of Plaintiff's current lawsuit; Gallipeau v. Mickens-Ham, No. 12-7508, 502 Fed.Appx. 258 (4th Cir. Dec. 27, 2012); that does not save Plaintiff's current lawsuit from being untimely. Plaintiff's previous lawsuit was dismissed without prejudice, and if a lawsuit is dismissed without prejudice, the statute of limitations is deemed to have continued to run from whenever the cause of action asserted in that case accrued, without interruption by the filing of that case. Elmore v. Henderson, 227 F.3d 1009, 1011 (7th Cir. 2000)[Where a suit is dismissed without prejudice, "then the tolling effect of the filing of this suit is wiped out and the statute of limitations is deemed to have continued running from whenever the cause of action accrued, without interruption by that filing"]. Therefore, the three (3) year statute of limitations continue to run, even during the pendency of Plaintiff's appeal in C.A. No. 09-1883. Sullivan v. Wells, No. 09-2551, 2010 WL 4156439, at * 4 and n. 1 (D.S.C. Oct. 19, 2010)[Findings that Plaintiff's statute of limitations began running, and continued running uninterrupted by the filing, and subsequent dismissals without prejudice, of Plaintiff's previous lawsuits which were affirmed by the Fourth Circuit Court of Appeals].

Plaintiff is also not entitled to an equitable tolling of the running of his statute of limitations, because under South Carolina law equitable tolling only applies when the Plaintiff's failure to timely file an action "has been induced or [Plaintiff] relies on the defendant's conduct or promises". Rink v. Richland Memorial Hospital, 422 S.E.2d 747, 749 (S.C. 1992); see Sullivan, 2010 WL 4156439, at * 4 [Noting that because South Carolina's statute of limitations applies to a § 1983 claim, the State's tolling rules also apply]. Plaintiff has offered no evidence, or even argument, to show that his failure to timely file this action was due to any conduct or inducement of the



Defendants. Rather, it is readily apparent that Plaintiff himself chose to appeal the dismissal of his prior action rather than simply refiling a new lawsuit once he had properly exhausted his administrative remedies.

Therefore, even if this Court were to find that Plaintiff's First Cause of Action is not subject to dismissal for failure to exhaust his administrative remedies, it would otherwise be barred as having been filed outside the applicable three year statute of limitations for this claim.

### III.

All of Plaintiff's remaining Causes of Action are asserted under state law. As such, since Plaintiff's only federal claim is recommended for dismissal, the undersigned would ordinarily recommend dismissal of Plaintiff's state law claims, without prejudice, so that he could pursue these claims in state court. See generally, United Mine Workers v. Gibbs, 383 U.S. 715 (1966). See In Re Conklin, 946 F.2d 306, 324 (4th Cir. 1991); Nicol v. Imagematrix, Inc., 767 F.Supp. 744, 746, 749 (E.D.Va. 1991); Mills v. Leath, 709 F.Supp. 671, 675-676 (D.S.C. 1988); Carnegie-Mellon v. Cohill, 484 U.S. 343 (1988); Taylor v. Waters, 81 F.3d 429, 437 (4th Cir. 1996). Dismissal of these remaining state law causes of action would not only allow the more appropriate court to rule on these exclusively state law issues, but even more importantly, if summary judgment were to be denied, it would be much more appropriate for these state law claims to be considered and tried by the state courts. Carnegie-Mellon, 484 U.S. at 350, n. 7 ["[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine . . . will point toward declining to exercise jurisdiction over the remaining state law claims."].

However, under the particular facts of this case, it is readily apparent that Plaintiff's



state law causes of action are all subject to dismissal for having been filed outside of the applicable statute of limitations, which for his state law claims is two years.  S.C. Code Ann. § 15-78-100(a).  Here, over three and a half years passed from when the conduct at issue occurred (June 2009) and the filing of this lawsuit (February 13, 2013).[11]  Therefore, Plaintiff's state law Causes of Action should all be dismissed, with prejudice.

## Conclusion

Based on the foregoing, it is recommended that the Defendants' motion for summary judgment be **granted**, and that this case be **dismissed**.

The parties are referred to the Notice Page attached hereto.

Bristow Marchant
United States Magistrate Judge

March 11, 2014
Charleston, South Carolina

---

[11] Even if Plaintiff could otherwise successfully assert that his first lawsuit, Civil Action No. 09-1883, stayed the running of the statute of limitations for his § 1983 claim, he did not assert any state law causes of action in that lawsuit.  Therefore, any such stay would not have applied to the State law claims Plaintiff is now asserting.

18



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29401

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).

